NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

OCT 23 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | | |
|---|---|---|
| JAMES ROBERT SCOTT, | ) | No. 12-56799 |
| | ) | |
| Petitioner - Appellee, | ) | D.C. No. 2:03-cv-00978-ODW |
| | ) | |
| v. | ) | MEMORANDUM* |
| | ) | |
| KEVIN CHAPPELL, Warden, | ) | |
| California State Prison at San | ) | |
| Quentin, | ) | |
| | ) | |
| Respondent - Appellant. | ) | |
| | ) | |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, II, District Judge, Presiding

Argued and Submitted October 7, 2013
Pasadena, California

Before: FERNANDEZ, PAEZ, and HURWITZ, Circuit Judges.

Kevin Chappell, Warden, California State Prison at San Quentin (hereafter

"the State"), appeals a December 12, 2012, district court order, which referenced a

prior stipulated protective order and sealed documents pursuant to the terms of that

---

*This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

protective order.

James Robert Scott, a prisoner subject to a death sentence, sought habeas corpus relief and claimed, inter alia, ineffective assistance of counsel (IAC). Scott and the State then entered into a stipulation for a protective order on July 24, 2006, which was accepted and ordered by the court on August 8, 2006. That order formed the basis of the minute order appealed here. We affirm.

(1) Scott first asserts that we lack jurisdiction over this appeal because the order does not constitute a final judgment. We disagree. We have long held that pursuant to the collateral order doctrine we have jurisdiction to hear appeals from protective orders in capital cases. See Bittaker v. Woodford, 331 F.3d 715, 717–18 (9th Cir. 2003) (en banc); see also Osband v. Woodford, 290 F.3d 1036, 1037–38 (9th Cir. 2002); Wharton v. Calderon, 127 F.3d 1201, 1204 (9th Cir. 1997). Whether we agreed or disagreed with those decisions, we would be bound by them. See Lair v. Bullock, 697 F.3d 1200, 1206–07 (9th Cir. 2012); Barapind v. Enomoto, 400 F.3d 744, 751 n.8 (9th Cir. 2005) (en banc) (per curiam); Miller v. Gammie, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc).

But, argues Scott, those authorities are no longer binding. For that proposition he cites Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 130 S. Ct. 599, 175 L. Ed. 2d 458 (2009). In that 42 U.S.C. § 1985(2) case, Mohawk

Industries sought to appeal an order that denied a request to preclude discovery of information which, it argued, was subject to the attorney-client privilege. Id. at 103–04, 130 S. Ct. at 603–04. The Supreme Court ruled that the collateral order doctrine "does not extend to disclosure orders adverse to the attorney-client privilege." Id. at 114, 130 S. Ct. at 609. Mohawk was concerned with ordinary civil litigation rather than with the arcane and tenebrific world of capital case habeas corpus litigation. Moreover, it dealt with orders adverse to the attorney-client privilege, and the order here was not adverse to that privilege. Nor does United States v. Guerrero, 693 F.3d 990 (9th Cir. 2012) affect our decision. There, too, the court was not presented with the question of protective orders designed to preserve the attorney-client privilege in capital case habeas corpus litigation. Thus, neither case overturns Bittaker or allows us to do so. We do have jurisdiction.

(2)     The State argues that the district court abused its discretion when it issued the December 12, 2002, protective order. We disagree.

The district court's discretion is broad. See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1211 (9th Cir. 2002); see also Lambright v. Ryan, 698 F.3d 808, 817 (9th Cir. 2012); United States v. Hinkson, 585 F.3d 1247, 1260, 1262 (9th Cir. 2009) (en banc). Even if some (or all) of the information had been disclosed in habeas corpus proceedings in the California courts, under the law

3

of California it remained subject to the attorney-client privilege. See In re Miranda, 43 Cal. 4th 541, 555, 182 P.3d 513, 525, 76 Cal. Rptr. 3d 172, 187 (2008); People v. Ledesma, 39 Cal. 4th 641, 695, 140 P.3d 657, 698, 47 Cal. Rptr. 3d 326, 375 (2006). Also, similar protections are available in federal proceedings. See Lambright, 698 F.3d at 819; Bittaker, 331 F.3d at 727–28. And there can be no doubt that sealing reifies the protections that the privilege aims at. See Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003); see also Swidler & Berlin v. United States, 524 U.S. 399, 407–08, 118 S. Ct. 2081, 2086, 141 L. Ed. 2d 379 (1998); Fireman's Fund Ins. Co. v. Superior Court, 196 Cal. App. 4th 1263, 1272, 127 Cal. Rptr. 3d 768, 775 (2011). Finally, we do not see how the State or the public will suffer harm from the protective orders in this case simply because the information might be available elsewhere, for example in the state-court system's public records. We do not read the protective orders to preclude the use of documents obtained through other means. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33–34, 104 S. Ct. 2199, 2208, 81 L. Ed. 2d 17 (1984). Our, and the district court's, concern is that nothing we do regarding the information that Scott has been compelled to reveal for this habeas corpus proceeding will violate "the integrity of the [disclosure] bargain"[2] or result in

---

[2]Bittaker, 331 F.3d at 726.

4

"'disruption of [an attorney-client] relationship'"[3] that the law would otherwise protect.

AFFIRMED.

---

[3]Fireman's Fund, 196 Cal. App. 4th at 1272, 127 Cal. Rptr. 3d at 775.